# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JANEL N. SMITH,<br>    Appellant,<br><br>  v.<br><br>DEPARTMENT OF JUSTICE,<br>    Agency. | DOCKET NUMBER<br>CH-1221-13-0304-W-2<br><br><br>DATE: September 9, 2016 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Janel N. Smith, Fairview Heights, Illinois, pro se.

Katherine Meng and Lance Simon, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1  The appellant has filed a petition for review, and the agency has filed a cross petition for review of the initial decision, which denied the appellant's request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as these only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that neither party has established any basis under section 1201.115 for granting the petition or cross petition for review. Therefore, we DENY the petition for review and the cross petition for review. Except as expressly MODIFIED by this Final Order, which finds that the appellant has proven that her disclosure was a contributing factor in a personnel action, we AFFIRM the initial decision.

## BACKGROUND

¶2    The appellant, an Industry Operations Analyst in the agency's Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), filed this IRA appeal alleging that, in reprisal for a September 21, 2010 complaint she filed with the agency's Office of Inspector General (OIG) and her contacting the Equal Employment Opportunity (EEO) Office, the agency included negative comments under the Attitude critical element on her October 18, 2010 performance appraisal, although both her overall rating and her rating in the Attitude critical element were Fully Successful. Initial Appeal File (IAF), Tab 1 at 1, 3, 5, 8; Appeal File (I-2 AF), Tab 4 at 44, 48-49, Tab 8 at 9-10, Tab 33 at 1-2.[2] The appellant alleged that she disclosed on September 21, 2010, that her immediate supervisor, L.S., added extra inspection hours on assignments after the assignments had been completed,

---

[2] It appears that the appellant's date of first contact with the EEO Office was on September 22, 2010. I-2 AF, Tab 4 at 22. She received notice of a final interview with the EEO counselor in December 2010, and filed her complaint of discrimination on January 7, 2011, after the agency took the personnel action at issue in this case. *Id.*

thereby manipulating inspection hours in a database that the agency utilized in providing information to Congress.  I-2 AF, Tab 8 at 5.

¶3        After finding that the Board had jurisdiction over the appeal and holding a hearing, I-2 AF, Tabs 15, 37, the administrative judge denied the request for corrective action, I-2 AF, Tab 40, Initial Decision (ID) at 1-2.  The administrative judge found that the appellant proved by preponderant evidence that she made a protected disclosure.  ID at 2, 4-7.  The administrative judge also found, however, that the appellant did not prove by preponderant evidence that her disclosure was a contributing factor in a personnel action.  ID at 7-9.  In this regard, the administrative judge held that L.S. was not aware, before she completed the appellant's performance appraisal, that the disclosure involved allegations of fraudulent or inflated data or statistics.  ID at 8.  Instead, the administrative judge found that the appellant had notified L.S. and other management officials only that her OIG complaint and EEO contact involved an assertion of "unprofessional internal disparity of treatment."  ID at 7-8.  The administrative judge also found that the appellant did not show that someone with actual or constructive knowledge of the disclosure influenced L.S. to include the comments at issue in the appraisal.  ID at 8‑9.

¶4        The administrative judge further held that, even if the appellant had shown that her disclosure was a contributing factor in the agency's decision to provide her with a less than favorable performance appraisal, the agency showed by clear and convincing evidence that it would have taken the same personnel action in the absence of her protected disclosure.  ID at 9.  In this regard, the administrative judge found that the agency produced compelling evidence to support the written comments expressed by L.S. in the Attitude critical element of the appellant's performance appraisal, there was no evidence of a retaliatory motive on the part of L.S., and L.S. included similar comments in the performance appraisal of a nonwhistleblower who was similarly situated to the appellant.  ID at 10‑15.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant's petition for review is denied.

¶5        The appellant asserts on review that L.S. had constructive knowledge of the content of the September 21, 2010 disclosure because the appellant previously had disclosed the inflation of inspection hours to L.S. in 2009 and in April 2010, and L.S. had responded to those disclosures by telling the appellant in 2009 to "ignore it" and by issuing an April 8, 2010 email to the office investigators regarding the matter. Petition for Review (PFR) File, Tab 1 at 5-6. The appellant contends that, based on the 2009 and April 2010 disclosures to L.S., L.S. should have reasonably suspected that the appellant's September 21, 2010 disclosure also related to the inflation of inspection hours. *Id.* at 13. The appellant further asserts that she disclosed harassment in the workplace, that L.S. had constructive knowledge of an attempt by the appellant to meet with L.S.'s supervisor in June 2010, that the appellant and L.S. were the only individuals who could add inspection hours into the database after inspections were closed, and that the appellant's 2011 performance appraisal reflects animus by L.S. toward the appellant. *Id.* at 5, 8. The appellant contends that all of these events show retaliatory animus by L.S. both before and after the appellant's September 21, 2010 disclosure. *Id.*

¶6        In determining whether reprisal for whistleblowing activities occurred, an inquiry must be made into whether the appellant made a disclosure protected under 5 U.S.C. § 2302(b)(8), the disclosure was a contributing factor in the agency's personnel action, and the agency can prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. *Armstrong v. Department of Justice*, 107 M.S.P.R. 375, ¶ 15 (2007). An employee may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could

conclude that the disclosure was a contributing factor in the personnel action. *Scott v. Department of Justice*, 69 M.S.P.R. 211, 238 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table).  To show that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way.  *Marano v. Department of Justice*, 2 F.3d 1137, 1143 (Fed. Cir. 1993).  An appellant also can show that a disclosure described under 5 U.S.C. § 2302(b)(8) was a contributing factor in a personnel action by proving that the official taking the personnel action had constructive knowledge of the protected disclosure; an appellant may establish constructive knowledge by showing that an individual with actual or constructive knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Marchese v. Department of the Navy*, 65 M.S.P.R. 104, 108‑09 (1994).

¶7          Although the appellant appears to assert that L.S. had constructive knowledge of the content of the September 21, 2010 disclosure because the appellant previously had disclosed to L.S. the inflated inspection hours, the appellant has not alleged or shown that an individual with actual or constructive knowledge of the content of the September 21, 2010 disclosure influenced L.S. Moreover, given that the appellant informed L.S. only that the September 21, 2010 OIG complaint and EEO contact were "due to unprofessional internal disparity of treatment from Management," I-2 AF, Tab 8 at 42-43, we find that the administrative judge correctly concluded, based in part on her finding that the testimony of L.S. was credible, that L.S. reasonably believed that the complaints related to ongoing issues between the appellant and one of the investigators, rather than inflated or fraudulent data.  ID at 5 n.2, 8.

¶8          To the extent that the appellant is alleging that she made protected disclosures before the September 21, 2010 disclosure that were a contributing factor in her October 18, 2010 performance appraisal, that she disclosed harassment in the workplace, and that L.S. demonstrated retaliatory animus

against her in her 2011 performance appraisal, the appellant did not raise such allegations below, I-2 AF, Tabs 15, 34, nor did she exhaust such allegations with the Office of Special Counsel (OSC), IAF, Tab 1 at 8; I-2 AF, Tab 8 at 14. Thus, she may not raise such allegations at this time. *See Fleming v. Department of the Interior*, 68 M.S.P.R. 222, 223-24 (1995) (finding that the Board lacked jurisdiction over an alleged threatened reassignment because the appellant did not raise this action before OSC); *Lewis v. Department of the Army*, 58 M.S.P.R. 325, 332 (1993) (finding in an IRA appeal that the Board may review only those disclosures of information that the appellant raised before OSC, provided that the appellant exhausted OSC proceedings). The mere fact that the appellant may have attempted to meet with L.S.'s supervisor in June 2010 does not demonstrate that L.S. had actual or constructive knowledge of the content of the appellant's September 21, 2010 disclosure.

¶9    We nevertheless find that the September 21, 2010 disclosure was a contributing factor in the October 18, 2010 performance appraisal. The administrative judge found that, although L.S. was aware that the appellant had filed the OIG complaint and contacted the EEO Office, L.S. was not aware that these complaints were based on allegations involving inflated statistics. ID at 8. Thus, the administrative judge found that, "[a]s these are the allegations [regarding inflated statistics] forming the basis of Ms. Smith's protected disclosure, I find [L.S.] did not know of the protected disclosure prior to completing Ms. Smith's appraisal," and that no reasonable person could conclude that the disclosure was a contributing factor in the performance appraisal when "knowledge of the disclosure occurred after the personnel action." *Id.* As set forth above, however, to satisfy the knowledge/timing test, the appellant need demonstrate only that the fact of, not necessarily the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Marano*, 2 F.3d at 1143; *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 25 (2015). Awareness of the fact of an appellant's disclosure is sufficient to

satisfy the knowledge component of the knowledge/timing test. *Ayers*, 123 M.S.P.R. 11, ¶ 26; *see McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 41 (2011) (explaining that, even though the record included no evidence that the acting official knew the details contained within the written disclosures, the fact that the appellant told him that he had made the disclosures is sufficient to establish the "knowledge" element of the knowledge/timing test), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012).

¶10      Here, the appellant sent an email on September 22, 2010, to several agency officials, including L.S., with the subject line "Complaint" and an indication that she had "attached a Memorandum, with pertinent information of a complaint filed."  I-2 AF, Tab 33 at 6.  The attached memorandum, dated September 22, 2010, and addressed to the "DIO," or Director of Industry Operations, indicated that the appellant had filed a complaint on September 21, 2010, with the OIG "due to unprofessional internal disparity of treatment from Management," that she previously had reported "concerns, issues, and incidents" to L.S. as they occurred, and that she also had contacted the EEO Office.  *Id.* at 4, 7.  As the administrative judge found, L.S. testified that she received the email and the attached memorandum.  ID at 7-8; I-2 AF, Tab 37, Hearing Compact Disc (HCD) Track 1003.  Thus, L.S. was aware of the fact of the appellant's September 21, 2010 disclosure on September 22, 2010, only weeks before she issued the October 18, 2010 performance appraisal in question.  We therefore find that the appellant has proven that her disclosure was a contributing factor in a personnel action.  *See* 5 U.S.C. § 1221(e)(1); *McCarthy*, 116 M.S.P.R. 594, ¶ 41; *DeLeonardo v. Equal Employment Opportunity Commission*, 103 M.S.P.R. 301, ¶ 10 (2006) (finding that the appellant raised a nonfrivolous allegation that her disclosure was a contributing factor in a personnel action when the acting official knew of the appellant's disclosure and issued her a Minimally Successful performance evaluation approximately 1 month later).

¶11     Having found that the appellant proved by preponderant evidence that her disclosure was a contributing factor in the performance appraisal, we turn to the question of whether the agency proved by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure.[3]

¶12     Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established.  5 C.F.R. § 1209.4(e).  In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors:  the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).  "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion."  *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶13     As set forth above, the administrative judge, citing to and applying the court's decision in *Whitmore*, found that the agency produced compelling evidence to support the written comments expressed by L.S. in the Attitude critical element of the appellant's performance appraisal, there was no evidence

---

[3] The Board may not proceed to the clear and convincing evidence test unless it has first found that the appellant made a protected disclosure that was a contributing factor in a personnel action.  *See* 5 U.S.C. § 1221(e)(2); *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).  Thus, the administrative judge should not have addressed the clear and convincing evidence test in this case.  Nevertheless, having found in this Final Order that the appellant established her prima facie case in this IRA appeal, we may now consider the administrative judge's alternative finding that the agency proved by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure.

of a retaliatory motive on the part of L.S., and L.S. included similar comments in the performance appraisal of a nonwhistleblower who was similarly situated to the appellant. ID at 10-15. The administrative judge noted that the Fully Successful rating in the Attitude critical element was the same rating that the appellant gave to herself in providing input to L.S. before receiving the appraisal, and that the appellant did not contest the Fully Successful rating itself, but focused instead on the comments under this critical element, which indicated that there were a number of occasions on which L.S. had to intervene in disruptions in the workplace between the appellant and a number of Industry Operations Investigators (IOIs), that L.S. had stressed to the appellant the importance of professionalism and treating other employees with respect, and that this was an area that "is being worked on by all." ID at 2, 10‑11.

¶14    Regarding the strength of the agency's evidence, the administrative judge noted that the appellant's attendance at an off-site assignment led to at least one confrontation with an IOI during the 2010 appraisal period, and that the IOI believed the appellant was confrontational and argumentative, while the appellant testified that she was simply asking questions during the inspection. ID at 12. The administrative judge also found that the appellant did not believe that she was respected within the office, which may have contributed to the interpersonal conflicts that occurred, and that documentary evidence supported the testimony of L.S. regarding the interpersonal conflicts in question. *Id.* Moreover, the administrative judge noted that L.S. attempted to obtain preventive training on personality conflicts for her staff and assigned two different courses regarding such training to them in July 2010. ID at 13. Further, the administrative judge found that L.S.'s appraisal comments merely indicated that interpersonal conflicts arose throughout 2010 and did not assign blame to the appellant. *Id.*

¶15    We agree with the administrative judge that the evidence in support of the appellant's 2010 performance appraisal is strong. L.S. provided extensive testimony, which the administrative judge found credible, regarding the

interpersonal conflicts at issue. I-2 AF, Tab 37, HCD Track 1002-1003; ID at 5 n.2, 12-13. The record also includes an April 27, 2010 email that L.S. sent to herself noting some of the conflicts the appellant was having with her coworkers; a June 14, 2010 email the appellant sent to L.S. addressing issues she was having with IOIs; a June 11, 2010 email L.S. sent to the appellant and an IOI (F.B.) addressing their recent lack of proper communication and stating that L.S. "will not allow your personal differences to fester and infect the entire office"; and emails from June and July 2010 documenting the efforts L.S. made to obtain training, including a course entitled "Building a Respectful Workforce," for her employees. I-2 AF, Tab 32, Agency Exhibits 4, 6, 11. L.S. notes in one of these emails that she is "having some difficulties with an employee and would like to present this training in my next roll call," and that "this employee is having difficulties dealing with other employees." *Id*., Agency Exhibit 11. L.S. testified that the "employee" she referred to in the email was the appellant. I-2 AF, Tab 37, HCD Track 1002. All of these emails were written by L.S. several months before the appellant's September 21, 2010 disclosure.

¶16     The appellant asserts that the agency's evidence supporting its contention that she was confrontational or argumentative during an inspection is unfounded and based on hearsay. PFR File, Tab 1 at 16, 20. The appellant's performance appraisal, however, did not indicate that she was "confrontational" or "argumentative"; rather, L.S. merely indicated that, as examples of occasions on which L.S. had to intervene in "disruptions" in the workplace, the appellant "had conflicts with the Investigators that you accompanied on inspections and on instances involving telephone inquiries." I-2 AF, Tab 8 at 64. In any event, relevant hearsay evidence is admissible in Board proceedings. *See Crawford‑Graham v. Department of Veterans Affairs*, 99 M.S.P.R. 389, ¶ 20 (2005).

¶17     The appellant also contends that the comments provided by L.S. in the appellant's mid-year progress review in April 2010 do not indicate that she

created any conflict. PFR File, Tab 1. The appellant's 2010 performance appraisal did not, however, indicate that she created the conflict. Rather, as the administrative judge found, it merely indicated that interpersonal conflicts arose throughout 2010 and did not assign blame to the appellant. I‑2 AF, Tab 8 at 63‑64; ID at 13. Moreover, the appellant's mid‑year progress review does reflect some concern regarding the appellant's performance. L.S. indicated that:

> [a]s discussed, you are performing at a Fully Successful rate. You have taken on your responsibilities with a professional attitude. You have been assigned to an Area Office with complex personalities that are at times difficult to understand. As I stated, be a part of the solution not the problem, stay on your individual path and you will be a success with ATF.

I-2 AF, Tab 8 at 66.

¶18    The appellant asserts that retaliatory animus may be inferred from a conversation she had with L.S. in which L.S. "mentioned instances of Agency employees filing grievances and/or complaints as getting 'Blacklisted' by the Agency." PFR File, Tab 1 at 16-17. The appellant has not identified any evidence in the record supporting her contention that L.S. made the above statement. In any event, we agree with the administrative judge that, because the alleged wrongdoing implicated L.S., one could infer there would be a strong retaliatory motive. ID at 13. Nevertheless, as the administrative judge also found, "it would be unreasonable to suggest [L.S.] was strongly influenced by retaliatory motives when drafting [the appellant's] appraisal, as the underlying events occurred throughout the year, prior to [the appellant's] whistleblowing activities." ID at 13-14. Further, the administrative judge correctly found that L.S. included similar comments in the appraisal of F.B., the IOI who engaged in a seemingly prolonged and repetitive conflict with the appellant and who was not a whistleblower, and similarly reduced F.B.'s rating for the critical element Interpersonal Relations from an Exceeds in 2009 to a Fully Successful in 2010. ID at 14; I-2 AF, Tab 32 at 32-37, 46-47, Tab 37, HCD Track 1003.

¶19     There is no requirement that an agency meet all three factors to satisfy its clear and convincing evidence burden in an IRA appeal. *Whitmore*, 680 F.3d at 1374. The factors are merely considerations to determine whether the agency has met its burden. *Id.* We agree with the administrative judge that, under the circumstances of this case, the strong evidentiary support for the comments L.S. made in the appellant's 2010 performance appraisal under the Attitude critical element, along with the similar comments L.S. included in the performance appraisal of a similarly situated nonwhistleblower, outweigh any perceived retaliatory motive that might have existed. ID at 14‑15.

¶20     Finally, the appellant asserts that the agency did not fully cooperate in discovery and destroyed evidence. PFR File, Tab 1 at 18-19. The administrative judge denied the appellant's motion to compel discovery regarding this matter, finding that the appellant did not comply with the discovery procedures set forth at 5 C.F.R. § 1201.73. I-2 AF, Tab 36. The appellant has not shown that the administrative judge abused her discretion in denying the motion to compel. *See Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016) (finding that an administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion the Board will not find reversible error in such rulings). Thus, we find no basis for disturbing the administrative judge's rulings regarding discovery.

¶21     Accordingly, we agree with the administrative judge's determination to deny the appellant's request for corrective action in this case because the agency has proven by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's protected disclosure.

The agency's cross petition for review is denied.

¶22     The agency asserts that the administrative judge should have dismissed this appeal for lack of jurisdiction because the appellant did not nonfrivolously allege that her disclosure was a contributing factor in an agency personnel action. PFR File, Tab 3 at 15. The agency contends that the administrative judge based

her jurisdictional determination on the timing of the disclosure and the personnel action without addressing the knowledge aspect of the knowledge/timing test. *Id.* at 16-18. The agency asserts that the appellant did not allege that L.S. had actual or constructive knowledge of the disclosure. *Id.* at 17.

¶23 The evidence submitted below, however, shows that L.S. received the appellant's email and attachment indicating that the appellant had filed a complaint with the OIG and contacted the EEO Office. I-2 AF, Tab 33 at 6-7. As set forth above, L.S. testified that she received the email and the attached memorandum. I-2 AF, Tab 37, HCD Track 1003. There is no dispute that L.S. was aware of the fact of the appellant's disclosure. Given that L.S. issued the contested performance appraisal approximately 1 month after the appellant made her protected disclosure, the administrative judge correctly held that the appellant nonfrivolously alleged that a protected disclosure was a contributing factor in a personnel action and that the Board had jurisdiction over this appeal.

¶24 The agency also asserts that the administrative judge erred in finding that the appellant proved by preponderant evidence that she made a protected disclosure to the OIG. PFR File, Tab 3 at 18-19. In this regard, the agency contends that the appellant did not submit a copy of her September 21, 2010 disclosure to the OIG, but instead produced an August 30, 2012 letter from the OIG that did not address the nature of her disclosure. *Id.* at 18. Thus, the agency asserts that there is no evidence in the record supporting the administrative judge's finding that the OIG disclosure was related to the conduct of L.S. and demonstrated gross mismanagement by L.S. *Id.*

¶25 The record does not appear to include a copy of the complaint the appellant filed with the OIG. In fact, it appears that she submitted the complaint by means of an agency website and indicated in a May 25, 2011 email to a supervisory EEO manager that she could not find the OIG complaint and thought that she had deleted it when the OIG did not respond and the matter was agreed to be handled through the EEO Office. I-2 AF, Tab 33 at 15-18. The OIG informed the

appellant in an August 30, 2012 letter that her complaint had been erroneously routed to an unrelated email folder location, which resulted in the nearly 2‑year delay in addressing her complaint. I-2 AF, Tab 8 at 25.

¶26   The administrative judge found that the appellant credibly testified that she noticed in 2009 and 2010 a pattern of "funny" and inflated numbers concerning the reporting of hours worked by Investigators. ID at 5-6; *see* I‑2 AF, Tab 37, HCD Track 1001. Moreover, the appellant asserted in numerous pleadings that she disclosed to the OIG that L.S. "was manipulating the inspection hours (adding on) after closing the inspections in the database (Nspect)." IAF, Tab 7 at 1-2; *see* I-2 AF, Tab 8 at 5-6; *Scott*, 69 M.S.P.R. at 228 (finding that an unsworn statement by an appellant in an initial appeal file is simply one form of admissible hearsay evidence). In a September 27, 2010 email to an individual in the agency's Office of Chief Counsel, the appellant notified him that her complaint to the OIG involved "[s]upervisory misconduct." I-2 AF, Tab 8 at 38‑39. All of this evidence is consistent with the appellant's OSC complaint, which indicated that she asserted in the OIG complaint that L.S. had inflated inspection reporting hours for her area office. *Id*. at 13-14. Under these circumstances, and given this pro se appellant's indication that she believed that she had deleted the OIG complaint, as well as the OIG's indication, nearly 2 years after the fact, that it had mishandled the complaint, we find that the agency has shown no error in the administrative judge's determination that the appellant proved by preponderant evidence that she made a protected disclosure of a violation of law, rule, or regulation and gross mismanagement as it related to the reporting of fraudulent and inflated statistics in a database relied upon by Congress to determine the agency's budget.

¶27   Accordingly, we deny the petition for review and the cross petition for review and affirm the initial decision as modified by this Final Order.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our

website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.